Good morning. May it please the court opposing counsel. My name is Christina Hunt and I represent Dustin Christensen. Mr. Christensen was convicted in the Eastern District of Washington for the offense of felon in possession of a firearm. And because he had a rape in the third degree conviction out of Washington State, was then subjected to the provisions of the Armed Career Criminal Act so that his sentence was increased from a statutory maximum of 10 years to a mandatory minimum of 15 years to life. In 1994, Mr. Christensen had sex with a person who was between the ages of 14 and 16. And at that time, he was more than four years older than her. And based on that offense 13 years ago, the district court looked at the situation, analyzed it really under a guideline provision and said that because of that, rape in the third degree was a violent felony, and thus he was subjected to ACCA. Now, as I understand it, this is a statutory rape statute, so that consent is not a defense. That is correct. No, that is correct. Consent is not a defense. So this well could have been, if we're simply looking at the text of the statute, this well could have been consensual sex. That is correct, Your Honor. And in addition to that, the way the statute reads, Mr. Christensen could and was 18 years old at the time that the offense was committed. The alleged victim in the case was 14. So there was we had an example of basically a statute that prohibits sex between teenagers, consensual sex between teenagers. The cases, of course, are like putting together a little crossword or a little puzzle between which age and whether it was potential or actual risk of harm. Would you address the case of United States v. Asprey, which seems to indicate that I think that was a child under 16 was the issue there, and there was a serious potential risk of injury? Correct. Why that doesn't, in effect, provide complete overlap with the issue here? Well, Your Honor, in Asprey, first of all, that was, as I understand it, a guideline case. It was whether or not that section, which is otherwise presents a serious risk of physical harm or injury, becomes an offense of violent felony. Now, in Asprey, when you're looking at a guideline provision, we are not talking about an increase of the statutory maximum. We are talking simply about a discretionary situation where the court could look at that, determine that that was a violent felony, and then increase a sentence up to the statutory max, not an increase of the statutory maximum, as is the case here. It's our position that ACCA and the career offender guidelines truly are two different animals. They are different animals because of the increase of the statutory max. Just to make sure we understand what we're talking about, the guideline language that was at issue in Asprey, I think, tracks pretty closely the statutory language for ACCA, that is to say serious potential risk of some form of physical injury. So in order to get to your position, we're going to have to say that the words in the ACCA statute. Well, but I also believe, Your Honor, when you look at Asprey, what the court looked at to determine if there was a serious potential risk of injury was the court in Asprey said, well, teenage pregnancies are a risk of harm. STDs create a risk of harm. And those kinds of sort of fictions that these things could occur with teenage sex are what could make it something that we should be able to increase under the career offender guidelines situation. In this particular case So let me just stop there to understand. You're saying that they were looking at the result as opposed to the steps that get you to the result. That's correct. So in order to disregard Asprey, we would have to adopt your argument that the only reason they interpreted the words that way is because the effect would not be quite as draconian or wouldn't be as rigid as in the ACCA. That's true. But not only rigid, you are talking about it should the way the statute in 924E should be interpreted should be a rigid interpretation because of the statutory increase. Because you can go from a statutory of max to a statutory maximum of life and that your minimum that you could get is increased by 50 percent. So you go from you could have only gotten 10, you can only get a minimum of 15. And that's precisely what happened to Mr. Christensen based on the third-degree regulation. Let me ask you this. As you saw, of course, there was a dissent, and it was a two-to-one decision in Asprey. We're bound, of course, by a two-to-one just as we're bound by a three-to-zero. Right. But I'm trying to figure out whether it's worth our arguing with Asprey and a dissent or something else. The premise of Asprey in majority is that risk of pregnancy and risk of sexually transmitted disease is injury within the meaning of the guideline. That's not necessarily an intuitive reading of the statute. Physical injury, when we're talking about crime, typically means bruises, broken bones, those sorts of things. Right. Obviously, sexually transmitted diseases are harmful. Injuries or death coming out of pregnancies are harmful. And unwanted childbirth is an injury. I mean, all those things are injuries. Are they physical? Should we think that those are physical injuries within the meaning of the statute? Absolutely not. And how do we get out from under Asprey, or do we simply have to say Asprey is wrong, and if we disagree, we have to go on bond? No. I think that the Court can say that while Asprey may apply under guideline situations, it becomes a different animal under the Armed Criminal Act. And, in fact, in this particular case, there was no proof submitted by the government that unwanted sex or sex between consenting teenagers leads to any of those potential consequences. And, in fact, no proof that it was here. We can't say that one, meaning it's obvious that if we're not talking about whether something did happen, but whether there's some serious potential risk of unwanted I would have to concede that. Of course there is. But the question is, I think, as Your Honor pointed out, is that a risk of injury is contemplated under 924-E. Is that an injury within the meaning of the statute? Right. It's a physical injury. That's what the statute says. Correct. But if you look at Pereira-Shira, I think it was, and they're looking at the Virginia law, I think the point there was any time you have, the theory is that any time you have an adult or an older person, you know, plus X number of years, that physically touches a child, and I think in that case it was 14 years old, that there's always a substantial risk in those cases of physical injury because you, because of the disparity in authority and age. And isn't that really the nub of this statute, the same issue? I can see that that could be interpreted to be the hub of the statute, but because the statute itself criminalizes conduct, sexual conduct between persons who are 14 to 16, and then with someone not more than 4 years older, you have a situation where an 18-year-old and a 14-year-old or a 15-year-old and a 19-year-old should not be having sex. And that, I think, Your Honor, I don't think that a 15-year-old and a 19-year-old can be so significantly different. They, in fact, can be very similar in terms of their mental status, their emotional age, that you don't have that same sort of concerns that you had in the Virginia case. Do you want to save your remaining time for a couple of questions? Thank you. May it please the Court. George Jacobs on behalf of the United States Attorney's Office. Does the panel have any questions of the Governor? Did you try that case? Your Honor, it was a result by guilty plea. I know that, but were you involved in it? Yes, I was, Your Honor. I'm just curious why there wasn't some prosecutorial discretion exercise. This seems very harsh. Your Honor, the 15 years to life. Yes, Your Honor, but that is a – Congress has legislated that penalty provision. And Mr. – Because it's charged. Yes, Your Honor. But it – Mr. Christensen, he was pled guilty to being a felon in possession of ammunition and – Two bullets. That's correct, Your Honor. But – But his mother alerted the law enforcement about – Yes, Your Honor, but the facts are not in dispute in this case. The United States' position is that the district court made a correct determination applying the Taylor categorical approach in looking – Very reluctant by Andrews. He thought it was pretty harsh, too, didn't he? Your Honor, I can't comment on – You're not going to get any points for acceptance of responsibility the way you're talking. It – That's exactly what Judge Sands said. That it was a harsh penalty? Yes. Well, Your Honor, that's correct. It is a harsh penalty, but that is something that Congress needs to address, and Congress has legislated that statute, and – May I ask – may I ask Judge Huggs' question in a slightly different way? We all understand what the statute says. Yes, Your Honor. What compelled your office to charge it? Anything? Your Honor, Mr. Christensen had a – has a criminal history that goes back very, very far. I don't remember to what age he started engaging in criminal conduct, but he had two – several prior violent felony convictions, and my office thought that it was appropriate to pursue the enhancement under the Armed Career Criminal Statute. So his mother turns him in, thinking that maybe there's going to be some help here, and you return the favor by charging 15 years to life for two bullets in a backpack when his mother turns him in. Is that correct? Your Honor, that's correct. His mother did – his mother did turn him into the authorities. That is correct. And for two bullets in a backpack with – he has violent felony, but we all understand the definition of violent felony in this context. There are lots of things that are violent felonies that just the ordinary person on the street would have to be educated to know that those are violent felonies. Yes, Your Honor, but the – given his third-degree rape of a child conviction, Your Honor, he did commit a crime against a minor, and under the statute, that is a violent felony under ACCA. I understand the argument. I mean, wasn't the whole purpose for the mother was you have a troubled person who needs some treatment? Wasn't that why she brought him to the police? Under – in some apparently ill-informed view that if you turn to the authorities for help, maybe they will help you. Wasn't that the purpose? Did your office explore that? Your Honor, is the question, was that the purpose? That's why she brought him in, I thought the testimony was. I think that the Court is correct on that, Your Honor, yes. Did your office explore that as an option for him? Well, Your Honor, I guess the question is if a mother wants to help a son, there are other ways she could do that. She could have turned him into drug rehabilitation or some other – she didn't necessarily have to turn him into the authorities. There are other things in the community that could have helped him. Yeah, I guess she knows that now, but not everybody has a J.D. degree and can figure out all your options. Well, Your Honor, I think the – yes, the mother, Mrs. Christensen, did notify the authorities that he would be at that parking lot, turn him in. Is there a difference between the guideline case in Asbury and this situation? Your Honor – That's guidelines. The other is statutory. Yes, Your Honor. However, as this Court has previously stated in the Noble-Kelley case, in the Ladwig case, I believe in the Footnote 2 in the Wood case, Footnote 9 in the Ladwig case, and Footnote 2 in the Kelley case, the definition of violent felony under 924E2B2 is identical to that of a crime of violence under 4B1.2A2. So this Court has consulted, and also in the Melton case, if memory serves me correctly, the Court consulted case law under 4B1.2 in construing the provision under ACCA. I'm not sure I understood the last comment. The – in the Melton case? Yes. I've got it here, Your Honor. In Melton, this Court has stated, although we have not previously construed the otherwise clause of the ACCA in the context of sexual abuse convictions, our analyses in the United States Sentencing Guidelines context provide guidance. Guidance. Yes, Your Honor. But not required. Well, Your Honor, the – That's the whole purpose of the Booker thing, is it's guidance. It's not mandatory. Well, Your Honor, the – if the Court looks at the language under the career offender provisions of the Guidelines and the language under the otherwise clause of ACCA, the language is identical. However, if the Court looks at the language under 18 U.S.C. Section 16B, it's different from the Guidelines and the ACCA provision. ACCA requires a serious potential risk of physical injury. Not that the injury actually occurred, Your Honor. Potential that it occurs. And if the Court looks at its case in Riley and Wofford, something that – a factor that was factored into the Court's determination was those crimes involved direct personal contact. And that's what you have in this crime. Sexual intercourse with a minor, direct personal contact. What was the injury? The injury is – Potential injury. In this case, Your Honor, or – The potential for the statute. The potential injury in this case, Your Honor, is unwanted pregnancy, sexually transmitted disease, and – Is that the kind of injury we're talking about for violent felony? Yes, it is, Your Honor. The mandatory age gap in this statute heightens the inherent risk of physical injury. And I cited a case in my – it's not from this circuit, but it's from the First Circuit, the Richards case, where the Richards case, the First Circuit was construing a main sexual abuse statute and concluded that categorically it constituted a violent felony under ACCA. But looking at Riley, where the Ninth Circuit held that grand theft from a person is a violent crime, that the crime involved direct physical contact between the perpetrator and the victim was significant to this circuit's determination, personal contact is part and parcel of this crime, third-degree rape of a child, as in Wofford, no matter how committed, every time a perpetrator engages in or attempts to engage in an act of rape, some contact with the victim is achieved. Such close proximity, coupled with the nature of this offense, creates an atmosphere that Yeah, but that's not what we're talking about. You're talking about not physical confrontation. You're talking about pregnancy. You're talking about sexually transmitted diseases. So don't change the subject. It – Your Honor, also, this Court has previously held and would in construing an indecent liberties statute under the State of Washington also concluded that that was a crime of violence. Yes, but this is consensual sex. This is a statutory rape case. This is not nonconsensual touching. This is not sexual abuse. This is statutory rape between consenting a 15-year-old and a 19-year-old. Your Honor, the Court has got to remember this is a crime involving a minor. The victim is – Did you hear me? I said 15 years old. Yes, Your Honor. I remember that it's a 15-year-old. Yes. My apologies, Your Honor. The – that type of crime creates a serious potential risk of physical injury. And your – and your contention is the statute within the meaning of physical injury, unwanted pregnancy, and sexually transmitted disease. That – that is included in the – yes, Your Honor. That's – that's – that's – It's sure different from the kind of risk of violence in the case you mentioned earlier about the theft. That's going to be a danger of physical violence because somebody's going to be resisting. That – that is true, Your Honor. However, this circuit has previously decided in Ladwig that a harassing telephone call constituted a crime of violence where there was no physical touching, just the threat. In that case, the caller had threatened to kill someone over the phone. And I think given the Court's holdings in Granbois, Asbury, Wood, Pereira, Salmeron. Which of those are guideline cases? Asbury is a guideline case, Your Honor. Pereira, Salmeron is a guideline case construing 2L1.2. Melton is a – an ACCA case. Please let me – Melton is an ACCA case. Wood is a guidelines case. Ladwig is a ACCA case. And I think my time is up, Your Honor. Are there any more questions? It appears not. Thank you. Thank you. We extended somewhat, so we'll give you two minutes for rebuttal this time. Thank you. Your Honor, please, if I can address the government's position in Melton, which was an ACCA case. The distinction between Melton and this case is that in the Melton case, the Alaska statute is the incest statute. So it was the criminalization of incest, a relative touching or having sexual contact with a child. In the Ladwig case, which was where the Court found that harassing telephone calls could be a predicate under ACCA, the distinction there is in that particular statute in the Ladwig case, it is a felony under Washington law to call someone up and expressly threaten to kill them, which falls within the – not within the catch-all, which is really what we're talking about here. The 924E prohibits conduct which has as an element of its use the threatened use of force, which is what the Ladwig case was about. In this particular case, we are talking about whether or not there is a serious risk of physical injury to another. My concern is also, Your Honors, in the case of consensual sex between teenagers and whether or not there is the risk of unwanted pregnancy or STDs, we simply seem to be discounting the fact that teenagers also use condoms. So they do. They can prevent themselves from unwanted pregnancy. They can assist themselves from not getting STDs. And yet the criminalization – Much less so when they're younger, though. True. But then you do have a situation here, Your Honor, where you have one who is at least 4 years older. So while a 15-year-old may not think to use a condom, a 19-year-old may. Well, again, but then we're talking about the victim. Correct. And if the victim didn't know about it, know how to protect herself, see if we're going to be subject to that injury. That's true. But, again, I would suppose at least in this day and age that most 15-year-olds do know about condoms. It's taught in school. It's taught at home. They see it on TV. So – In the categorical analysis, do we figure in whether it was consensual or not? Under the categorical analysis, Your Honor, because the statute makes no distinction here, I think you don't figure that in. If we went to – and I think truly it doesn't matter because there is no distinction here. All right. Thank you. Thank you very much. The case just argued, United States v. Christensen is submitted.
judges: Hug, McKeown, W. Fletcher